UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRANCES KENWORTHY,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY.

    Defendant.
_____/

Case No.  1:15-CV-1006

HON. GORDON J. QUIST

## **OPINION**

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner).  Plaintiff Frances Kenworthy seeks review of the Commissioner's decision denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act.

### **STANDARD OF REVIEW**

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).  The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility.  *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence.  *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever evidence in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

This is the second time Plaintiff's applications for benefits have reached this level of review. By way of background, Plaintiff filed for benefits on July 29, 2009. (PageID.88–89, 884–896.) She had previously graduated from college and had been employed as both an office and sales clerk, but claimed that she had become disabled due to shoulder problems and bipolar disorder. (PageID.340, 375, 996.) Plaintiff's applications were denied on December 10, 2009, after which time she requested review by an ALJ. (PageID.92–99.) On December 2, 2011, ALJ Jessica Inouye rendered a written decision finding that Plaintiff was not disabled. (PageID.38–50.) On June 10, 2013, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.22–28.) Plaintiff appealed to this district, and on September, 18, 2014, Judge Neff adopted Magistrate Judge Carmody's Report and Recommendation that

reversed and remanded the Commissioner's decision for failure to provide good reasons for assigning less than controlling weight to the opinion of Plaintiff's treating physician. *See Kenworthy v. Comm'r of Soc. Sec.,* No. 1:13-cv-875 (W.D. Mich. Sept. 18, 2014). Consistent with Judge Neff's order, the Appeals Council remanded the case to ALJ Carol Guyton.[1] (PageID.484–490.) On March 17, 2015, ALJ Guyton issued a decision finding Plaintiff not disabled. (PageID.300–328.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

---

[1] During the pendency of Plaintiff's case, Plaintiff filed additional applications for benefits. The Appeals Council's remand order consolidated these applications with those at issue here.

[2]
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 404.1520(f)).

Plaintiff has the burden of proving the existence and severity of limitations caused by her impairments and that she is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

On remand, ALJ Guyton determined Plaintiff's claim failed at the fifth step of the evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 29, 2009, her alleged onset date. (PageID.306.) At step two, the ALJ determined Plaintiff had the following severe impairments: (1) bipolar disorder; (2) generalized anxiety disorder; (3) borderline personality disorder traits; and (4) history of substance addiction disorder. (PageID.306.) At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (PageID.309–311.) At the fourth step, the ALJ found that Plaintiff retained the RFC based on all the impairments:

> to perform a full range of work at all exertional levels but her ability to reach overhead, push, and pull with the right upper extremity is reduced to occasionally; she should avoid concentrated exposure to unprotected heights, moving machinery, vibration, and extreme temperatures; and she is unable to climb ladders, ropes, or scaffolds and can occasionally crawl. She has the following nonexertional limitations: the claimant is limited to nonproduction-paced, simple, routine, and repetitive work (simple routine tasks involving no more than simple short instructions and simple work-related decisions with few workplace changes.) She should not work in close proximity to co-workers; should have no more than occasional contact with others; should not engage in jobs requiring tandem tasks; and can have occasional contact with the public and occasional supervision. She should be allowed to make[] notes to aid memory.

(PageID.311–312.) Continuing with the fourth step, the ALJ determined that Plaintiff was unable to perform any of her past relevant work. (PageID.320–321.) At the fifth step, the ALJ questioned a vocational expert (VE) to determine whether a significant number of jobs exist in the economy that

4

Plaintiff could perform given her limitations. *See Richardson*, 735 F.2d at 964. The VE testified that Plaintiff could perform the following work: folder (52,000 national jobs), garment sorter (55,000 national jobs), and sorter of agricultural products (53,000 national jobs). (PageID.103–105.) Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (PageID.322.)

Accordingly, the ALJ concluded that Plaintiff was not disabled at any point from her alleged onset date through the date of decision. (PageID.322.)

## DISCUSSION

### 1. The ALJ Properly Considered Dr. Moskowitz's Opinions.

On February 11, 2010, Dr. David Moskowitz completed an RFC questionnaire consisting of a checkbox worksheet and short answer questions. Among other things, the doctor opined that Plaintiff was diagnosed with bipolar disorder and assigned a GAF score of 28, noting that in the past year the highest GAF score applicable to Plaintiff was a 35.[3] (PageID.251.) He further indicated that Plaintiff was unable to meet competitive standards in the area of maintaining attention for two hour segments. She could not maintain regular attendance and be punctual, nor complete a normal workday without interruptions. She could not accept instructions and respond appropriately to criticism, nor ask simple questions or request assistance. (PageID.253.) She also could not deal with normal work stress. (PageID.249.) Finally, he noted she could be expected to miss more than four days of work per month. (PageID.255.) On March 31, 2010, Dr. Moskowitz

---

[3]The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 1994) (hereinafter DSM-IV). A score of 21–30 indicates that "behavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment OR inability to function in almost all areas. American Psychiatric Association." *Id.* at 34. A GAF score of 31–40 indicates "some impairment in reality testing or communication OR major impairment in several areas such as work, school, family relations, judgment, thinking or mood." *Id.*

5

repeated many of the above limitations, and also provided further discussion of Plaintiff's medical history.  (PageID.249–250.)  The ALJ discussed Dr. Moskowitz's opinions as follows:

> Dr. Moskowitz's opinions in Exhibits B9F and B10F are given little weight.  His GAF's are significantly below all other mental health professionals who have also treated the claimant.  His treatment notes from January 2008 to September 2009 cover a period of time when the [claimant] was working for most of the time (Exhibit B3F).  He does not indicate the time period covered by his limitations.  He says the claimant can work in an environment with few people and that is accommodated in the residual functional capacity in this decision.  The alleged onset date is July 29, 2009, and his opinions were provided in February and March 2010.  After her medications were adjusted in May 2011 (Exhibit B11F), by June 2011 she was feeling better and her mood was better with broad affect.  There were complaints of side effects from medications, but by September 2011 no side effects were noted.  From that point forward into 2012, her mood was euthymic; and she was basically doing well (Exhibit B12F).  There was some indication from the social worker in September 2011 that the claimant had difficulties leaving the house, but that is not consistently reported; and the GAF was 60 (Exhibit 13F).  The claimant has had a few complaints of side effects from medications, but they are not consistent and usually happen when new medications are started.
>
> . . .
>
> Although Dr. Moskowitz was a treating physician, as noted above his opinions are given little weight as they are not supported by his own records or those of other treating sources.

(PageID.320.)  Plaintiff argues that despite the above discussion, the ALJ failed to provide good reasons for assigning less than controlling weight to the doctor's opinions.  The Court disagrees.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition.  *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).  An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v.*

6

*Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).  It is undisputed that Dr. Moskowitz qualifies as a treating source.

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)).  The ALJ may reject the opinion of a treating physician where it is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2 (citing *Shavers*, 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so.  *Gayheart*, 710 F.3d at 376.  Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Id.*  This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule."  *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).  Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment.  *Id.* at 376–77.

Plaintiff begins by taking issue with the ALJ's closing sentence, quoted above, arguing that it is impermissibly vague, and does not reflect the inconsistency that is required to discount a treating physician's opinion. (PageID.870–871.)  The Court does not agree with Plaintiff that this sentence reflects an independent reason to discount the doctor's opinion.  Read in context, it is clear the ALJ was merely summarizing her reasons articulated in the preceding paragraph for

7

giving only little weight to the doctor's opinion.  The Court does agree with Plaintiff on one point, however; the ALJ's statement that Dr. Moskowitz's GAF scores differed from those assigned by other physicians does not constitute a good reason for  assigning less than controlling weight to the doctor's opinion.  The Sixth Circuit has stated that a GAF score "may have little or no bearing on the subject's social and occupational functioning," *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 511 (6th Cir. 2006).  And as the ALJ herself noted earlier in her decision,  "GAF scores are highly subjective and non-standardized, as evidenced by the disparity in the scores."  While it is true that Dr. Moskowitz's low GAF scores were much lower than those assigned by other physicians, the Court nonetheless finds that such fact does not constitute a good reason for discounting his opinions.

Plaintiff would have the analysis end there, claiming that "the invalidity of even one of the ALJ's stated reasons . . . renders the finding reversibly erroneous." (PageID.874.)  The Court disagrees. Plaintiff relies on *Allan v. Commissioner of Social Security*, No. 10-CV-11651, 2011 WL 2670021 (E.D. Mich. July 8, 2011), a decision from the Eastern District of Michigan, which is not binding on this Court.  *See Mich. Elec. Emps. Pension Fund v. Encompass Elec. & Data, Inc.*, 556 F. Supp.2d 746, 761–62 (W.D. Mich. 2008).  In *Allan*, the court remanded the ALJ's credibility analysis, finding it was partially flawed because only one of three reasons provided by the ALJ for discounting the Plaintiff's allegations were supported by substantial evidence.  2011 WL 2670021, at *3.  Aside from not being binding on this Court, the Sixth Circuit has since rejected *Allan's* approach.  *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) (stating that "'[s]o long as there remains substantial evidence supporting the ALJ's conclusions on credibility and the error does not negate the validity of the ALJ's ultimate credibility conclusion, such is deemed harmless and does not warrant reversal'") (quoting *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d

8

1155, 1162 (9th Cir. 2008)).  The *Ulman* court further noted it had also adopted a harmless error approach to the treating physician doctrine as well.  *Id.* (citing *Wilson*, 378 F.3d at 547).  Accordingly, the ALJ's error here is harmless if the ALJ provided other good reasons, supported by substantial evidence, that sustain the ALJ's ultimate conclusion that the treating physician's opinion is entitled to less than controlling weight.  The Court finds such here.

The ALJ noted, for example, the inconsistency between the extreme limitations provided by Dr. Moskowitz, and his statement that Plaintiff "can work in an environment which has few people who stress her." (PageID.253.)  The ALJ indicated she was adopting this portion of the opinion. (PageID.320.)  The ALJ also noted Dr. Moskowitz rendered his opinions in February and March of 2010, soon after Plaintiff's onset date in July 2009.  In addition the ALJ noted the last treatment note from the doctor is dated even earlier in September 2009, only a few months after the onset date.  Contrary to Plaintiff's assertion, the ALJ did not note this fact because she was requiring a contemporaneous opinion with treatment, but rather found that the doctor did not have the benefit of reviewing further development in the record.

These additional records, the ALJ determined, demonstrated that Plaintiff was not as impaired as Dr. Moskowitz alleged.  In doing so, the ALJ discussed Plaintiff's treatment with Dr. Rishi Mahabir, who treated Plaintiff after she had ceased treating with Dr. Moskowitz.  At her first visit, Plaintiff stated she had not had a manic episode in a "long time" but was suffering from depression. (PageID.256.)  Dr. Mahabir found her to be cooperative, alert and oriented, with appropriate memory, attention and concentration, but she was also on the verge of tears and had a dysphoric mood. (PageID.257.)  The doctor started her on Effexor and urged Plaintiff to meet with a therapist, though Plaintiff declined the meeting. (PageID.258.)  In June 2011, Plaintiff stated she felt much better.  She felt Effexor was strong, and took only a portion of the prescribed dosage, but

denied any side effects. Plaintiff's prescriptions were continued. (PageID.259.) A month later, Plaintiff complained of feeling sedated, distraught, frustrated and irritable due to Effexor. Dr. Mahabir ceased Effexor and started her on Celexa. (PageID.260.) In August, Plaintiff complained of side effects from Celexa, and she was taken off the medication and started on Ativan. Plaintiff also agreed to see a therapist. (PageID.261.) In September 2011, Plaintiff was feeling much better. Her anxiety had lessened, her mood was improved, and she was more socially active. She had a good appointment with the therapist. (PageID.263.) Dr. Mahabir found Plaintiff had an euthymic mood, appropriate memory, attention, and concentration, a good judgment and improving insight. (PageID.263.) In October, Plaintiff again stated she was doing pretty well, with no complaints regarding her medication. (PageID.265.) In November, Plaintiff stated she had anxiety attacks a couple times a week, and that her medication was no longer helping her anxiety. (PageID.266.) She described, however, a good session with her therapist and "mood wise she was doing well." Her medications were adjusted and she was started on Lexapro. (PageID.266.) In December, Plaintiff stated she was "doing much better" on the new medication. She again had a euthymic mood, and her affect was "broad and bright." Plaintiff's dosage of the new medication was increased in hopes that she would further improve. (PageID.267.) At her next visit in 2012, Plaintiff was doing well overall. She denied any significant problems with her depression or anxiety. (PageID.268.)

In highlighting those other records close in time to Dr. Moskowitz's opinions, the ALJ did not "cherry pick" the record. The argument that the ALJ mischaracterized or "cherry-picked" the record is frequently made and seldom successful, because "the same process can be described more neutrally as weighing the evidence." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009). The narrow scope of judicial review of the Commissioner's final administrative decision does not include re-weighing evidence, deciding questions of credibility, or

substituting the court's judgment for that of the ALJ. *See Ulman*, 693 F.3d at 713; *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Court finds that the ALJ's decision provides an accurate summary of the administrative record, and rejects Plaintiff's claim.

For all the above reasons, the Court finds the ALJ has provided good reasons, supported by substantial evidence, for giving less than controlling weight to Dr. Moskowitz's opinions. Plaintiff's claim of error is accordingly denied.

### 2.     The ALJ Properly Evaluated Plaintiff's Subjective Complaints.

At the administrative hearing, Plaintiff testified she was impaired to an extent far greater than that recognized by the ALJ. For example, she testified that two days out of a week she would not be functional and need to stay in bed. She would sleep for sixteen hours, be awake for a few hours, and sleep for another sixteen hours. (PageID.358) The ALJ found Plaintiff's testimony to be "not fully credible" (PageID.318–19.) Plaintiff argues the ALJ erred in doing so.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, may be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984); *see also Grecol v. Halter*, 46 F. App'x 773, 775 (6th Cir. 2002). As the relevant Social Security regulations make clear, however, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. §§ 404.1529(a), 416.929(a); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)); *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 989 (6th Cir. 2009). Instead, a claimant's assertions of disabling pain and limitation are evaluated under the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

11

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004).

Accordingly, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Id.* (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Id.* (citing *Walters*, 127 F.3d at 531); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) ("It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit has stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (citation omitted).

The ALJ discussed Plaintiff's credibility as follows:

> The claimant has given several inconsistent statements regarding matters relevant to her disability. She testified at the initial hearing that she had not consumed alcohol on a consistent basis or worked since her alleged onset date. However, the claimant and her boyfriend submitted function reports stating that the claimant was able to work part-time after her alleged onset date (Exhibits B7E and

> B8E). She also informed Dr. Casimir that she consumes approximately one pint of alcohol per week (Exhibit B5F pp. 2-3). She also reported that she is able to play tennis, which is inconsistent with her allegations of severe shoulder pain. Although the inconsistent information provided by the claimant may not be the result of a conscious intention to mislead, nevertheless the inconsistencies suggest that the information provided by the claimant generally may not be entirely reliable.

(PageID.318–319.) These inconsistencies more than support the ALJ's decision to discount Plaintiff's testimony as less than credible. Indeed, Plaintiff did tell the first ALJ that she had not consumed alcohol on a consistent basis, but earlier admitted to drinking a pint a week. (PageID.226, 76.) She stated she had not worked, even for a day, since July 2009 (PageID.62.) But in her function report dated September 2009 she stated she was working, noting in her daily activities that she would shower if she needed to work and that she worked less than twenty hours a week. (PageID.1019.) Similarly, her boyfriend noted she was working part time. (PageID.1033.) Plaintiff attempts to minimize these inconsistencies, arguing that the ability to perform part-time work is not inconsistent with a disability determination and claiming that there is no indication her alcohol use caused her limitations. (PageID.877–878.) This is besides the point. What clearly mattered to the ALJ is that Plaintiff had provided inconsistent statements regarding her work history and alcohol use. It was not in error for the ALJ to note them and discount Plaintiff's allegations for that reason. *See* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). Accordingly, Plaintiff's claim of error is denied.

## CONCLUSION

For the reasons articulated herein, the Commissioner's decision will be **AFFIRMED.** A separate judgment shall issue.


Dated: October 7, 2016                               /s/ Gordon J. Quist
                                                                             GORDON J. QUIST
                                                  UNITED STATES DISTRICT JUDGE